UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| O'DONNELL/SALVATORI INC., | |
| Plaintiff, | Case No. C20-882-MLP |
| v. | ORDER |
| MICROSOFT CORPORATION, | |
| Defendant. | |

## I.  INTRODUCTION

This matter is before the Court on Microsoft Corporation's ("Microsoft") partial motion for judgment on the pleadings. (Mot. (Dkt. # 26).) O'Donnell/Salvatori Inc. ("ODS") filed a response (Resp. (dkt. # 33)) and Microsoft filed a reply (Reply (dkt. # 42)). The Court heard oral argument on February 1, 2021. (Dkt. # 47.) Having considered the parties' arguments, submissions, the balance of the record, and the governing law, the Court ORDERS Microsoft's motion be GRANTED, in part, and DENIED, in part, for the reasons discussed below.

## II.  BACKGROUND

Martin O'Donnell and Michael Salvatori formed ODS to create original music and provide audio related services for videogames. (Compl. (Dkt. # 1-3) at ¶ 8.) On August 28, 2002,

ORDER - 1

Microsoft commissioned ODS, through an Independent Contractor Agreement ("ICA"), for the creation and delivery of audio compositions and incidental music for Microsoft's Halo videogames. (*Id*. at ¶ 9.) For the original Halo videogame, ODS composed a core musical theme reminiscent of a Gregorian chant that became iconic and well-known as the videogame's popularity grew. (*Id*.) The ICA was amended five times between 2003 and 2009. (*Id*. at ¶¶ 10-23.) The amendments addressed royalties that ODS was set to receive and work that ODS was contracted to complete on additional Halo game installments. (*Id*.) In 2005, the parties executed a "Confirmatory Work-Made-for-Hire and Backup Assignment Agreement" which they attached and expressly incorporated into the second amendment to the ICA. (Dkt. # 11, Ex. B.)

ODS initiated this action in King County Superior Court based on allegations that Microsoft breached the ICA and amendments by failing to pay ODS pursuant to the negotiated terms and by engaging in other unlawful conduct. (*Id*. at ¶¶ 42-74.) In its complaint, ODS alleges Microsoft still owes it payments for use of the Halo music or derivative works and for internal uses of the music for promotional and marketing purposes. (*Id*.) Additionally, ODS alleges Microsoft failed to use its reasonable best efforts to commercially exploit the Halo music. (*Id*.) Based on those allegations, ODS brought six causes of action against Microsoft: (1) breach of contract; (2) breach of fiduciary duty to develop the royalty income in a joint venture; (3) breach of duty to act in good faith and fair dealing; (4) failure to provide an accounting partnership; (5) unjust enrichment; and (6) tortious interference. (*Id*. at ¶¶ 42-74.) Microsoft's instant motion seeks to dismiss ODS's claims for breach of fiduciary duty, accounting, tortious interference, unjust enrichment, duty of good faith and fair dealing, and further asserts ODS's claims for breach of contract, duty of good faith and fair dealing, and unjust enrichment are time-barred. (*See generally* Mot.)

### III. DISCUSSION

#### A. Rule 12(c) Standards

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed. *See* Fed. R. Civ. P. 12(c). A court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citation omitted); *see also Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 925 (9th Cir. 2011) (explaining that the court "assume[s] the facts alleged in the complaint are true . . ."). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.*; *see Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011).

When a Rule 12(c) motion is used as a vehicle for a Rule 12(b)(6) motion after an answer has been filed, or when it is functionally equivalent to a motion to dismiss for failure to state a claim, the same standard applies to both. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Dismissal for failure to state a claim "is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

On a Rule 12(c) motion, the court is not strictly limited to considering the face of the complaint. Just like on a Rule 12(b)(6) motion, the court may consider material that is properly submitted as part of the complaint without converting the motion into a summary judgment motion. *Point Ruston, LLC v. Pac. Nw. Reg'l Council of the United Bhd. of Carpenters & Joiners of Am.*, 658 F.Supp.2d 1266, 1273 (W.D. Wash. 2009) (citing *Lee v. City of L.A.*, 250

F.3d 668, 688 (9th Cir. 2001)). Even if the documents are not physically attached to the complaint, the court may consider them if their authenticity is not contested and the complaint necessarily relies on them. *Id.* at 1273-74 (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).

### B. Breach of Fiduciary Duty

To prevail on a claim of breach of fiduciary duty, the plaintiff must prove the "(1) existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury." *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wash.App. 412, 432 (2002). Under Washington law, "the existence of a fiduciary relationship is not simply a matter of reposing trust and confidence in the integrity of another." *Moon v. Phipps,* 411 P.2d 157, 160 (Wash. 1966). "There must be additional circumstances, or a relationship that induces the trusting party to relax the care and vigilance which he would ordinarily exercise for his own protection." *Id.* The existence or nonexistence of a fiduciary relationship is a question of law, and "depends in each case on the particular circumstances." *Id.* at 161.

Microsoft asserts that because ODS was an independent contractor and the ICA and amendments were the result of an arm's-length contractual relationship, no fiduciary duty existed. (Mot. at 7 (citing Compl., Ex. A at I §§ 1(i), (iii)).) Microsoft argues the parties' intention to enter a contractual relationship, not a trust relationship, is supported by ODS's own allegations that it retained counsel to negotiate the ICA, which explicitly states Microsoft engaged ODS as an independent contractor. (*Id.* at 7-8.) Microsoft also notes that ODS alleges it had concerns that Microsoft was not keeping track of royalties and was not properly compensating ODS, and thus sought clarity regarding the parties' agreement. (*Id.* at 8 (citing

ORDER - 4

Compl. at ¶ 11).) Microsoft argues ODS's allegations show it did not relax its care and vigilance, but instead, exercised care for its own protection. (*Id.* at 8.)

ODS responds that Microsoft owed it a fiduciary duty based on the alleged existence of a joint venture, agency relationship, and partnership. (*See* Resp. at 9-13; Compl. at ¶¶ 46-52.) The Court first turns to ODS's primary assertion that the parties had a joint venture to exploit the Halo music.

The essential elements of a joint venture include: (1) an express or implied contract, (2) a common purpose, (3) a community of interest, and (4) an equal right to control. *Paulson v. Pierce Cnty,* 99 Wn.2d 645, 654 (1983); *Ballo v. James S. Black Co.,* 39 Wash.App. 21, 27 (1984). Joint venture may also be evidenced by the right to share in profits, a duty to share in losses, and a joint proprietary interest in the subject matter. *See Adams v. Johnston*, 71 Wash.App. 599, 611 (1993) (citing 48A C.J.S. *Joint Ventures* § 10 (1981)). Joint ventures are generally to be treated in law identically to partnerships. *Barrington v. Murry,* 35 Wash.2d 744, 752 (Wash. 1950) (citing *Paulson v. McMillan,* 8 Wash.2d 295 (Wash. 1941)).

ODS's claim is premised on the ICA and five subsequent amendments that span eight years. (Resp. at 9-13.) ODS alleges the parties' agreements show they did not enter into a single transaction, but rather had an on-going relationship that grew with the popularity of the Halo game franchise. (Resp. at 13.) ODS asserts this relationship is evidenced by the amendments that expanded the scope of the work outlined in the ICA and added additional musical works. (*Id.* at 4-6, 11.) ODS also asserts the amendments added revenue events and gave ODS the right to approve licenses for production of machinima[1] works if the license fee differed from a pre-approved arrangement (*Id*. at 6.)

---

[1] Machinima productions are computer animation based on video games. Matthew Brett Freedman, *Machinima & Copyright Law*, 13 J. Intell. Prop. L. 235, 236 (2005).

Here, the Court finds ODS has failed to establish a joint venture with Microsoft. In addition to the ICA's designation of ODS as an independent contractor, other terms in the parties' agreements undermine ODS's assertion of a joint venture. As argued by Microsoft, Microsoft pays ODS royalties from a portion of its revenue, not its profits, and ODS has not alleged it shares in Microsoft's losses.[2] (Reply at 3 (citing Compl., Ex. A Part I at § 1; Ex. B at § 1; Ex. C at §§ 4-5; Ex. D at § 3.1(c)).) The ICA also provides Microsoft exclusive rights to the Halo music and therefore ODS lacks equal control of the work. (*Id.*) Although ODS may have rights to approve licenses for machinima productions, this agreement indicates it lacks control over all work outside of that provision. (*Id.* at 4.) Because ODS lacks control over the Halo music and only receives portions of Microsoft's revenue, it has not plausibly alleged a joint venture.

The cases cited by the parties support this conclusion. Microsoft analogizes this matter to *Wolf v. Superior Court*, 107 Cal.App.4th 25 (Cal. App. 2d Dist. 2003). (Mot. at 11.) In *Wolf*, a writer assigned Disney rights to his work for fixed compensation, a percentage of net profits from Disney's film regarding the work, and contingent compensation of any future gross receipts earned from merchandise or other exploitation of the work. 107 Cal.App.4th at 27-28. The writer asserted that because his contractual right to contingent compensation required him to trust that Disney would account for its revenues, and the revenues were in Disney's exclusive knowledge and control, Disney owed him a fiduciary duty. *Id.* at 30. The writer alleged Disney breached its duty by underreporting revenues and the nature of third-party agreements. *Id.* at 28. The court found the duty to account for profits, by itself, does not create a fiduciary relationship, and that nothing in the parties' arm's-length agreement created a fiduciary duty. *Id.* at 28-36. Similarly, in

---

[2] ODS conceded at oral argument that there is no clause in the ICA that requires ODS to share in Microsoft's losses.

the instant matter, the ICA and amendments are a result of arm's-length agreements, and ODS has not alleged facts that show anything during the negotiations or in the agreements created a fiduciary relationship. Further, Microsoft's obligation to pay ODS a portion of its revenues is insufficient to show a fiduciary duty, even if the revenues were in Microsoft's knowledge and control.

ODS cites to two cases that are distinguishable from the facts alleged in this action. First, ODS argues the instant matter is similar to *Celador Intern. Ltd. v. Walt Disney Co.*, 347 F.Supp.2d 846 (C.D. Cal. 2004). (Resp. at 10.) In *Celador*, the court found the plaintiffs sufficiently alleged a joint venture because they claimed the parties had a joint interest in the business at issue, plaintiffs possessed reversionary rights and rights to merchandising, the parties shared profits and losses, and that there were meaningful consultation rights. 347 F.Supp.3d at 855. As discussed above, ODS did not share in Microsoft's profits or losses, and ODS did not have control over the Halo work or how to exploit it. Accordingly, the facts in the instant matter, unlike in *Celador*, do not support a finding of a joint venture

Second, ODS argues the instant matter is similar to *Apple Records, Inc. v. Capitol Records, Inc.,* 137 A.D.2d 50 (N.Y. App. Div. 1st Dept. 1988). In that matter, the Beatles entered into multiple agreements with Capitol Records before gaining notoriety, which were later modified. *Id.* at 52. After founding their own record label, the Beatles retained Capitol Records to manufacture and distributes their records. *Id.* The parties later engaged in multiple lawsuits in which the Beatles' record label claimed, *inter alia*, that Capitol Records breached its fiduciary duties. *Id.* at 53. The court found the parties' long, enduring relationship evidenced a special relationship of trust and confidence that existed independently of the contractual duties, especially given how naïve the Beatles were when they first contracted with Capitol Records. *Id.*

at 57. Here, ODS has not shown that it was naïve and trusted Microsoft when it entered into the ICA and amendments. Rather, ODS was represented by counsel during negotiations, and in seeking clarifications to protect its own interests. Thus, although the parties' agreements span eight years, the unique facts of *Apple Records* are not present. Accordingly, ODS's claim for breach of fiduciary duty based on an alleged joint venture is dismissed.

Next, the Court finds ODS has failed to allege a fiduciary duty based on theories of an agency or partnership relationship. "An agency relationship may exist, either expressly or by implication, when one party acts at the instance of and, in some material degree, under the direction and control of another." *Stansfield v. Douglas Cnty*, 107 Wash.App. 1, 17 (2001) (citing *Matsumura v. Eilert,* 74 Wash.2d 362, 368 (Wash. 1968)). "The burden of establishing the agency relationship rests upon the party asserting its existence." *Id.* (citing *Hewson Constr., Inc. v. Reintree Corp.,* 101 Wash.2d 819, 823 (Wash. 1984)). An agency relationship is created, either expressly or by implication, "when one party acts at the instance of and, in some material degree, under the direction and control of another." *Hewson,* 101 Wash.2d at 823. Consent and control are the essential elements of the relationship. *Stansfield,* 107 Wash.App. at 17. The law of partnership is a branch of the law of agency, and accordingly, the liability of one partner for the acts of his copartners is founded upon the principles of agency. *Poutre v. Saunders*, 19 Wash.2d 561, 565 (Wash. 1943).

As previously discussed, the ICA expressly states ODS is an independent contractor and provides Microsoft exclusive rights to the Halo work. Further, ODS has not alleged that Microsoft consented to ODS acting on its behalf. Accordingly, ODS has not alleged the necessary consent or manifestation of control to establish an agency relationship or partnership and its breach of fiduciary duty claims based on these theories are dismissed.

ORDER - 8

### C. Accounting

Microsoft argues that because ODS has failed to allege a joint venture, its accounting claim must be dismissed. (Mot. at 12; Reply at 7.) ODS asserts that because Microsoft had exclusive access to revenue generating events, it is obligated to provide an accounting to ODS. (Resp. at 13) ODS cites *Wolf* in support of its argument, which found:

> … in contingent compensation and other profit-sharing cases where essential financial records are in the exclusive control of the defendant who would benefit from any incompleteness, public policy is best served by shifting the burden of proof to the defendant, thereby imposing the risk of any incompleteness in the records on the party obligated to maintain them.

(*Id.* at 14 (citing *Wolf*, 107 Cal.App.4th at 35).) ODS also cites paragraph 3 of the ICA that states:

> MS shall furnish CONTRACTOR with a statement, together with payment for any amount shown thereby to be due to CONTRACTOR. The statement shall be based upon Net Receipts for the quarter then ended and shall contain information sufficient to discern how the royalty payment was computed.

(Resp. at 14.)

The Court finds ODS has failed to allege a claim for accounting. ODS's claim is an equitable remedy that attaches to its assertion that the parties had a joint venture. As conceded by ODS at oral argument, if its argument that the parties had a joint venture fails, its accounting claim likewise fails. For the reasons discussed above, the Court finds ODS failed to plausibly allege a joint venture, and, accordingly, its accounting claim is dismissed.

### D. Tortious Interference

ODS alleges Microsoft tortuously interfered with several of ODS's business expectancies. A party claiming tortious interference must prove five elements: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of

the relationship or expectancy; (4) that defendant interfered for an improper purpose or used improper means; and (5) resultant damage. *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wash.2d 133, 157 (Wash. 1997). Further, to assert a claim for tortious interference, Plaintiff must "show a specific relationship between it and identifiable third parties." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wash.2d 342, 352, n.2 (Wash. 2006).

ODS alleges Microsoft failed to register the Halo music with performing rights organizations and failed to license the music with third parties, resulting in, *inter alia*, lost licensing and enforcement opportunities. (Compl. at ¶¶ 33-35, 71-73.) Specifically, ODS alleges that Microsoft refused to allow Showtime, a licensed third party, to use the Halo music, refused to register the Halo music with ASCAP and BMI, and failed to seek compensation from YouTube, Twitch, and other streaming services that use the music daily. (*Id.* at ¶¶ 33-35.)

Microsoft responds that because it has exclusive rights to the music and how to exploit it, ODS has no right to license the Halo music to third parties. (Mot. at 15; Reply at 8.) It therefore argues its alleged failure to license music was not an interference with an expectancy between ODS and a third party, but instead an alleged interference with royalties that Microsoft would have owed ODS if the work had been licensed or registered. (*Id.*)

Here, the Court finds ODS has failed to sufficiently allege a tortious interference claim. ODS's allegations essentially assert that Microsoft breached certain provisions of the ICA and amendments. Although ODS alleges Microsoft failed to exploit the Halo music with third parties such as Showtime, and failed to register the Halo work, ODS has not alleged that it had a business expectancy with those third parties. Rather, ODS would have received royalties from Microsoft's revenues had the music been licensed or if Microsoft had pursued other revenue events. Further, ODS has failed to sufficiently allege Microsoft interfered with ODS's alleged

expectancy for an improper purpose, or through improper means, other than to generally assert that Microsoft agreed to register with performance rights organizations but failed to do so. (Resp. at 17.) Accordingly, ODS tortious interference claim is dismissed.

### E. Unjust Enrichment

Unjust enrichment allows recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it. *Young v. Young*, 164 Wash.2d 477, 484 (2008)*; Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.,* 61 Wash.App. 151, 160 (1991) ("Unjust enrichment occurs when one retains money or benefits which in justice and equity belong to another."). "A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract." *Chandler v. Washington Toll Bridge Authority*, 17 Wash.2d 591, 604 (Wash. 1943).

Here, the Court finds ODS failed to plausibly allege an unjust enrichment claim. The parties do not dispute that they entered into a valid and express contract—the ICA—which governs the payment of royalties. (*See* Compl. at ¶ 67 ("Upon information and belief, Microsoft has falsified what royalty statements to omit royalty events which were clearly defined in the ICA.")).) The parties are therefore bound by the ICA's provisions and ODS cannot seek an unjust enrichment claim based on terms contained in the ICA.

ODS contends there are terms in the ICA that do not have an assigned royalty, but rather require the parties to negotiate in good faith, such as Section 3(c)(viii) of the Third Amendment of the ICA. (Resp. at 18 (citing Dkt. # 14 at 30).) ODS argues such terms are vague and ambitious and require the parties to agree to agree on those royalties. (*Id.* (citing *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash.2d 171, 175 (Wash. 2004) ("Agreements to agree are

unenforceable in Washington.")).) Having reviewed the terms cited by ODS, the Court is not persuaded the language is so vague as to make the ICA unenforceable. Courts have found contracts enforceable with similar language so long as the agreement contains a method for determining a price that can be enforced. *See Valley Garage, Inc. v. Nyseth*, 4 Wn. App. 316 (1971). Accordingly, the Court dismisses ODS's unjust enrichment claim.

### F. Duty of Good Faith and Fair Dealing

ODS asserts Microsoft failed to act in good faith and fair dealing in performing its obligations under the parties' agreements, namely that Microsoft failed to exploit reasonable business opportunities of the Halo music to third parties. (Compl. at ¶¶ 54-59.) At oral argument, ODS clarified that its claims are based on provisions in the ICA and amendments that provide ODS rights outside of royalty payments. Specifically, ODS claims Microsoft refused to allow third parties to use the Halo music, failed to register ODS music with ASCAP and BMI, and failed to seek compensation from other sources that use the Halo music, as discussed above. (Compl. at ¶¶ 33-35.) ODS asserts that because these revenue opportunities were listed in the ICA, there was a presumption Microsoft would pursue them.[3]

Microsoft responds ODS's good faith and fair dealing claims would require altering or contradicting the express terms of the ICA. It argues that based on the plain language of the ICA, Microsoft is not required to exploit all reasonable opportunities to exploit the work to third parties, and that it has exclusive rights to the Halo music and thus controls the manner in which it chooses to exploit the music. (Mot. at 19.)

---

[3] ODS also argues in its briefing that Microsoft had a duty to negotiate ongoing terms of the contract for further revenue regarding its own exploitation of the music for self-promotion as a third party. (Resp. at 19.) Microsoft represented at oral argument that it does not seek to dismiss this claim in the instant motion.

"There is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank,* 116 Wash.2d 563, 569 (Wash. 1991); *Rekhter v. State, Dept. of Soc. and Health Servs.*, 180 Wash.2d 102, 112 (Wash. 2014). "[T]he duty [of good faith and fair dealing] arises only in connection with terms agreed to by the parties." *Badgett*, 116 Wash.2d at 569; *Johnson v. Yousoofian,* 84 Wash.App., 755, 762 (1996) ("The implied duty of good faith is derivative, in that it applies to the performance of specific contract obligations. If there is no contractual duty, there is nothing that must be performed in good faith." (citations omitted)). The duty of good faith and fair dealing arises "when the contract gives one party discretionary authority to determine a contract term." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,* 86 Wash.App. 732, 738 (1997).

The Court finds ODS has plausibly alleged claims for breach of good faith and fair dealing. Although Microsoft asserts it had exclusive rights to the Halo music and how to exploit it, ODS has presented allegations that the parties agreed ODS would be able to collect income from performance rights organizations and licensing fees from third parties, and Microsoft failed to take any steps to pursue those opportunities. Taking ODS's allegations as true and construing them in the light most favorable to ODS, the allegations are sufficient to allege that Microsoft violated its implied duty to exploit the Halo music in the ways negotiated by the parties' agreements and included in the agreements.

ODS also asserts Microsoft failed to provide year-end accounting and that it improperly included other items in royalty statements. (Compl. at ¶¶ 57-58.) The Court finds ODS's allegations raise factual questions regarding royalty payments, including what payments were

owed and when they were due. Accordingly, the Clout declines to dismiss ODS's good faith and fair dealing claims regarding year-end accounting and royalty statements.

### G. Statute of Limitations Regarding Breach of Contract, Duty of Good Faith and Fair Dealing, and Unjust Enrichment Claims

A claim of breach of a written contract has a six-year statute of limitations pursuant to RCW 4.16.040. A three-year limitations period applies to duty of good faith and fair dealing and unjust enrichment claims. RCW 4.16.080(3); *Pruss v. Bank of Am. NA*, C13-1447-MJP, 2013 WL 5913431 (W.D. Wash. Nov. 1, 2013) (explaining that a claim for "breach of the duty of good faith and fair dealing claims are subject to a three year statute of limitations." (citing RCW 4.16.080)); *Eckert v. Skagit Corp*., 20 Wash.App. 849, 851 (1978) ("The 3-year statute of limitations applicable to actions on unwritten contracts, RCW 4.16.080(3), applies to an action for unjust enrichment").

Generally, a cause of action accrues, and the statute of limitations begins to run, when a party has the right to apply to a court for relief. *Haslund v. Seattle*, 86 Wash.2d 607, 619 (Wash. 1976). Accrual of a contract action occurs on breach. *See, e.g., 1000 Virginia Ltd. Partnership v. Vertecs Corp*., 158 Wash.2d 566, 576 (Wash. 2006); *Schwindt v. Commonwealth Ins. Co.,* 140 Wash.2d 348, 353 (Wash. 2000); *Safeco Ins. Co. v. Barcom,* 112 Wash.2d 575, 583 (Wash. 1989) An action for unjust enrichment lies in a promise implied by law that one will render to the person entitled thereto that which in equity and good conscience belongs to that person. *Hedin v. Roberts*, 16 Wash.App. 740 (1977). The promise to pay, implied by law, is the promise that was broken, and thus the claim accrues when the promise was broken. *Eckert*, 20 Wash.App. at 851. The same is true for accrual for duty of good faith and fair dealing claims. *Kinney v. Cook*, 150 Wash.App. 187, 191, 193 (2009). However, a time-barred action upon an unpaid debt may be

revived if the debtor acknowledges the debt in writing. *See* RCW 4.16.280; *In re Tragopan Props., LLC*, 164 Wash.App. 268, 273 (2011).

Microsoft asserts a number of ODS's claims are based on conduct that predates the applicable statute of limitations and therefore should be dismissed. Specifically, Microsoft cites ODS's allegations that in April 2006, it raised concerns that Microsoft was not keeping track of or paying royalties. (Mot. at 21 (citing Compl. at ¶ 11).) Microsoft also cites ODS's allegations that Microsoft breached the ICA in 2008 and 2011 by using the Halo music on Zune devices and YouTube without compensating ODS. (*Id.* (citing Compl. at ¶¶ 30-31).) Microsoft asserts that because this alleged conduct occurred more than three and six years before ODS initiated its suit, any claims relying on these allegations should be dismissed.

ODS appears to acknowledge some of its claims would be time-barred, however, it argues Microsoft reaffirmed its obligation to compensate ODS for royalties it allegedly owed and intended to pay, and therefore tolled the statute of limitations. (Resp. at 20.) In support of its argument, ODS cites a 2019 email from Microsoft regarding its obligations to ODS and attached royalty statements from 2012-2018. (*Id.* (citing Buscaglia Decl. (Dkt. # 34), Exs. A, B-H).) ODS asserts that Microsoft therefore expressed its intent to follow through with its obligations to ODS within the applicable limitations period. (*Id.* (citing *Fetty v. Wenger*, 110 Wash.App 598 (2001) (finding courts generally apply RCW 4.16.280 to restart the statute of limitations when there is an acknowledgment or promise in writing signed by the party to be charged that evidences a new or continuing contract).) ODS also generally asserts Microsoft tolled the limitations period

because it made at least one payment under the parties' contract. (Resp. at 21 (citing *Sanders v. Brown*, 123 Wash. 611, 612 (Wash. 1923); RCW 4.16.270[4]).)

Based on ODS's allegations, the Court finds the statute of limitations does not bar ODS's claims. The Court notes that the email cited by ODS contains statements by Microsoft that to date, it believed ODS was paid in full under the parties' agreements, indicating it did not owe ODS any further payments. However, ODS has plausibly alleged Microsoft owed it ongoing royalty payments and caused a loss of revenue opportunities. ODS's allegations thus raise questions of fact concerning what royalties and other payments Microsoft owed and what Microsoft's intentions or communications were regarding those payments. The Court therefore denies Microsoft's motion to dismiss ODS's claims as time barred.

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS Microsoft's motion (dkt. # 26) be GRANTED, in part, and DENIED, in part. The Court orders Microsoft's motion be granted as to ODS's breach of fiduciary duty claim, accounting claim, tortious interference claim, and unjust enrichment claim. The Court orders Microsoft's motion be denied as to ODS's duty of good faith and fair dealing claims and Microsoft's argument that ODS's breach of contract, duty of good faith and fair dealing, and unjust enrichment claims are time-barred.

Dated this 12th day of February, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

---

[4] RCW 4.16.270 provides: "When any payment has been or shall be made upon any existing contract prior to its applicable limitation period having expired, whether the contract is a bill of exchange, promissory note, bond, or other evidence of indebtedness, if the payment is made after it is due, the limitation period shall restart from the time the most recent payment was made. Any payment on the contract made after the limitation period has expired shall not restart, revive, or extend the limitation period."

ORDER - 16