The Honorable Michelle L. Peterson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

O'DONNELL/SALVATORI, INC., an Illinois corporation,

                Plaintiff,

  v.

MICROSOFT CORPORATION, a Washington corporation,

                Defendant.

Case No. 2:20-cv-00882-MLP

**MICROSOFT CORPORATION'S OPPOSITION TO PLAINTIFF/COUNTERCLAIM DEFENDANT'S CONSOLIDATED MOTION FOR SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR**:
February 25, 2022

**HEARING ON**:  March 24, 2022

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................ 2

   A.  Undisputed Material Facts Relevant to ODS's Motion for Summary Judgment on Authorship. ............................................................................... 2

       1.  Halo Work Before Mr. O'Donnell's Employment with Microsoft ........... 2

       2.  Mr. O'Donnell's Microsoft Employment ................................................. 3

       3.  Development of the Halo Works ............................................................ 4

           a.  Halo: Combat Evolved ("Halo 1") ............................................... 4

           b.  Halo 2 ....................................................................................... 5

           c.  Halo 3, Halo 3: ODST, and Halo: Reach .................................... 6

       4.  Microsoft's Counterclaim ...................................................................... 6

   B.  Undisputed Material Facts Relevant to ODS's Good Faith and Fair Dealing Claim ............................................................................................. 7

III. ARGUMENT ............................................................................................................ 8

   A.  The Court Should Deny Summary Judgment for ODS on Microsoft's Counterclaim Concerning Authorship. ....................................................... 9

       1.  There are genuine issues of fact as to whether Mr. O'Donnell's Microsoft employment makes Halo 1 and 2 works for hire. ..................... 9

           a.  The work was of the kind that Mr. O'Donnell was employed by Microsoft to perform. ............................................. 10

           b.  The work occurred substantially within the authorized time and space limits. .......................................................................... 11

           c.  The work was actuated, at least in part, to serve Microsoft. .......... 12

       2.  Regardless, the Halo 1 and Halo 2 works are works for hire because Microsoft specially commissioned them. ..................................... 13

           a.  A written instrument that memorializes a work for hire agreement can be signed after the work is created. ...................... 14

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

b.     There is a genuine issue of fact whether the ICA memorializes the parties' intent for the Halo 1 works to be made for hire. ............................................................................... 15

c.     There is a genuine issue of fact whether the ICA memorializes the parties' intent for the Halo 2 works to be made for hire. ............................................................................... 17

3.     ODS is not the author of "musical elements" "carried over" from Halo 1 and 2 works to later works. ........................................................... 19

a.     There are questions of fact concerning what "musical elements" "carried Over" to later works. ...................................... 19

b.     Even if later works include "musical elements" from works that ODS authored, ODS is not the author of the later works. ............................................................................................... 20

c.     The Court should exclude Mr. O'Donnell's improper expert testimony about similarity of elements. ......................................... 21

B.     The Court Should Retain Supplemental Jurisdiction. ............................................ 22

C.     The Court Should Deny ODS Summary Judgment on Its Claim for Breach of the Implied Duty of Good Faith and Fair Dealing. ........................................... 25

IV.     CONCLUSION ............................................................................................................... 28

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Albingia Versicherungs A.G. v. Schenker Int'l Inc.*,
   344 F.3d 931, *opinion am. & superseded on denial of reh'g*, 350 F.3d 916
   (9th Cir. 2003)..................................................................................................................22

*Aventa Learning, Inc. v. K12, Inc.*,
   830 F. Supp. 2d 1083 (W.D. Wash. 2011).........................................................26, 27

*Avtec Sys., Inc. v. Peiffer*,
   21 F.3d 568 (4th Cir. 1994) .....................................................................................11

*Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*,
   554 F.3d 595 (5th Cir. 2009) ...................................................................................23

*Campinha-Bacote v. Rearden*,
   2011 WL 1343343 (D. Alaska Apr. 8, 2011) ..........................................................14

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
   508 U.S. 83 (1993).......................................................................................................25

*Carol Wilson Fine Arts, Inc. v. Zifen Qian*,
   71 F. Supp. 3d 1151 (D. Or. 2014), *aff'd*, 671 F. App'x 701 (9th Cir. 2016) .........12

*Catzin v. Thank You & Good Luck Corp.*,
   899 F.3d 77 (2d Cir. 2018).........................................................................................23

*Ets-Hokin v. Skyy Spirits, Inc.*,
   225 F.3d 1068 (9th Cir. 2000) ...................................................................................20

*Flaherty v. Warehousemen, Garage & Serv. Station Emps. Loc. Union No. 334*,
   574 F.2d 484 (9th Cir. 1978) .......................................................................................8

*Fuzie v. Manor Care, Inc.*,
   461 F. Supp. 689 (N.D. Ohio 1977).............................................................................25

*Gladwell Gov't Servs., Inc. v. County of Marin*,
   265 F. App'x 624 (9th Cir. 2008) ...............................................................................15

*Good v. Fluor Daniel Corp.*,
   222 F. Supp. 2d 1236 (E.D. Wash. 2002) ...................................................................23

*Hubbard v. Fid. Fed. Bank*,
   91 F.3d 75 (9th Cir. 1996) .........................................................................................18

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Hunt Skansie v. City of Gig Harbor*,
    2010 WL 2650502 (W.D. Wash. July 1, 2010) ...................................................24

*Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*,
    476 F. Supp. 2d 291 (S.D.N.Y. 2007)...............................................................25

*Estate of Kauffmann v. Rochester Inst. of Tech.*,
    932 F.3d 74 (2d Cir. 2019)................................................................................14

*Kid Stuff Mktg., Inc. v. Creative Consumer Concepts, Inc.*,
    223 F. Supp. 3d 1168 (D. Kan. 2016)...............................................................14

*Looney Ricks Kiss Architects, Inc. v. Bryan*,
    2010 WL 4068885 (W.D. La. Oct. 14, 2010) ...................................................14

*Luke v. Fam. Care & Urgent Med. Clinics*,
    323 F. App'x 496 (9th Cir. 2009) .....................................................................21

*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of
Contemporary Dance, Inc.*,
    380 F.3d 624 (2d Cir. 2004)................................................................................12

*Matson v. UPS, Inc.*,
    2018 WL 3608396 (W.D. Wash. July 26, 2018) ..............................................19

*In re Microsoft Partner Program Litig.*,
    2006 WL 1348390 (W.D. Wash. May 16, 2006)...............................................17

*Montano v. City of Chicago*,
    375 F.3d 593 (7th Cir. 2004) ...........................................................................23

*Playboy Enterprises, Inc. v. Dumas*,
    53 F.3d 549 (2nd Cir. 1995)............................................................14, 15, 16, 17

*Preci-Dip SA v. Tri-Star Elecs. Int'l, Inc.*,
    2018 WL 6521500 (C.D. Cal. Sept. 5, 2018) ...................................................28

*Schiller & Schmidt, Inc. v. Nordisco Corp.*,
    969 F.2d 410 (7th Cir. 1992) ...........................................................................14

*Schneider v. TRW, Inc.*,
    938 F.2d 986 (9th Cir. 1991) .....................................................................22, 23

*Smith v. Weeknd*,
    2019 WL 6998666 (C.D. Cal. Aug. 23, 2019)..................................................20

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ...........................................................................21

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - iv

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contactors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) ........................................................................8

*TMTV, Corp. v. Mass Prods., Inc.*,
   345 F. Supp. 2d 196 (D.P.R. 2004), *aff'd*, 645 F.3d 464 (1st Cir. 2011) ...............14

*Touve v. Harold David Story, Inc.*,
   2021 WL 4245375 (D. Or. Sept. 17, 2021) ......................................21, 22

*Triple J. Saipan, Inc. v. Sanchez*,
   2007 WL 4197303 (N. Mar. I. Oct. 25, 2007) ........................................28

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
   692 F.3d 1009 (9th Cir. 2012) ..............................................9, 11, 12

*Union Station Assocs., LLC. v. Puget Sound Energy, Inc.*,
   238 F. Supp. 2d 1226 (W.D. Wash. 2002)..............................................23

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966)..........................................................................23

**State Cases**

*Rekhter v. Department of Social & Health Services*,
   180 Wn.2d 102 (2014) ..................................................................26, 27

**Federal Statutes**

17 U.S.C.
   § 101............................................................................... *passim*
   § 102(a) ..........................................................................................20
   § 103(b) ..........................................................................................20
   § 201(a) ...........................................................................................9

28 U.S.C. § 1367(a) .........................................................................22

**Rules**

Fed. R. Civ. P.
   26(a) ...........................................................................................21
   37(c)(1) .........................................................................................21
   56(a) .............................................................................................8

**Other Authorities**

1 Nimmer on Copyright
   § 5.03[A] ........................................................................................6
   § 5.03[B][2][b]..........................................................................14, 15

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - v

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Restatement (Second) of Agency.................................................................................................10

# I.     INTRODUCTION

The Court should deny Plaintiff/Counterclaim-Defendant O'Donnell/Salvatori Inc. ("ODS")'s motion for summary judgment on Microsoft's counterclaim and for remand, as well as its motion on its claim for breach of the implied duty of good faith and fair dealing.

*First*, ODS's motion on Microsoft's counterclaim is nothing more than a transparent, eleventh-hour effort to escape this forum, but genuine issues of material fact require denying the motion.  ODS asks the Court to decide that ODS (not Microsoft) is the author of (a) works that ODS delivered for use in the Halo 1 and Halo 2 games; and (b) by way of a passing reference in a footnote, of "musical elements" "carried over" in later games.  A party is a work's author if the party creates the work or the work is a "work made for hire" (i.e., "work for hire") under the Copyright Act.  Under § 101, a work is a "work for hire" (a) when an employee creates the work in the scope of his or her employment; or (b) when it is specially commissioned by a third party and satisfies certain statutory formalities.  Here, there are questions of fact concerning whether ODS's principal, Martin O'Donnell, created the Halo 1 and Halo 2 works in the course of his employment with Microsoft as Audio Lead for the Halo videogames, making Microsoft their author.  Further, Microsoft specially commissioned the Halo 1 and Halo 2 works and is thus their author.  And even if ODS had properly briefed the "musical elements" "carried over" into later works (and it did not), fact issues would abound.

*Second*, the Court should retain supplemental jurisdiction over ODS's claims.  ODS's remand request comes too late.  Discovery has closed, and trial is less than three months away.  The Court has expended considerable resources learning the facts of the case and applicable law.  Given these circumstances, remand would not serve the values of judicial economy, convenience, or fairness that must accompany such a decision.  ODS has known since at least September 2020 that it could raise any concerns over the Court's exercise of supplemental jurisdiction but waited until now to do so, without any justification for the delay.  Moreover, as Microsoft's motion for summary judgment and motion to exclude the testimony of ODS's music expert make clear, the Court will have to apply the Copyright Act to portions of the state

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 1

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

law claims to resolve them, providing another reason for this Court to retain jurisdiction.

*Finally*, the Court should deny ODS's motion for summary judgment on its duty of good faith and fair dealing claim for the reasons in Microsoft's motion for summary on that claim. Dkt. 125 at 16-24. As Microsoft explained in that motion, ODS's implied duty claims—i.e., that Microsoft allegedly failed to register certain works with performing rights organizations ("Failure to Register" claim), and to commercially exploit the works ("Exploit Opportunities" claim) would require adding to or modifying the written words of the ICA— which Washington does not allow. ODS does not deny it was represented by sophisticated music counsel throughout its decade of contracting with Microsoft. Indeed, as Microsoft showed in its motion, the parties' contracting history confirms that Microsoft rejected some of the obligations ODS now seeks to add using the implied duty of good faith and fair dealing. The Court should reject ODS's effort to obtain through litigation contract terms it did not obtain in negotiations. In addition, ODS's "Showtime" claim rests on a patently false premise: Far from refusing to license the music to Showtime, Microsoft **granted** a license to Showtime to use the music. Microsoft will pay ODS any royalties to which it is owed once Showtime finalizes the music selection so that Microsoft can calculate the amount of any royalty payment. Any "Showtime" implied duty claim simply is not ripe. If, however, the Court were inclined to deny Microsoft's summary judgment motion, it should, at a minimum, find issues of fact prevent summary judgment for ODS on the "Exploit Opportunities" claim.

## II.      STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.      Undisputed Material Facts Relevant to ODS's Motion for Summary Judgment on Authorship.

#### 1.      Halo Work Before Mr. O'Donnell's Employment with Microsoft

In the late 1990s, according to ODS's principal, Martin O'Donnell, ODS contracted with Bungie to create music and sound design for several videogames in a different series called "Myth." Dkt. 115 ¶¶ 5-6. For those games, ODS and Bungie's license agreements appeared to provide that ODS retained ownership of the musical works. *See id.* Bungie listed

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 2

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

ODS, as an entity, in the credits for its videogames.  For instance, the credits for one of the Myth games apparently state that "Sound & Music Design" was provided by "O'Donnell/Salvatori Music, Inc.," along with three individuals (including Mr. O'Donnell and Mr. Salvatori).  Dkt. 115-3 at 51.  The credits for another Myth game state that "Sound & Music Design" was provided by "Total Audio, Inc." (ODS's trade name) and the same three individuals.  Dkt. 115-4 at 77.

According to Mr. O'Donnell, in July 1999, ODS created a music track for Bungie's demonstration of the Halo prototype at the MacWorld event.  Dkt. 115 ¶ 9.  Mr. O'Donnell claims the MacWorld track, 3 minutes and 2 seconds in length, was included as a bonus track on Bungie's Myth soundtrack.  *Id.* ¶¶ 13-14.  Although he testified that ODS retained the MacWorld files, ODS did not produce a copy of the track it created for MacWorld during discovery, which would have been responsive to Microsoft's discovery requests.  Kumar Opp'n Decl. ¶ 10 & Ex. 9 (RFP No. 33); *id.* Ex. 1 ("O'Donnell Dep.") at 219:13-22.

On March 22, 2000, Bungie and ODS purportedly entered a license agreement, under which ODS would provide "complete sound design, foley work and music composition/production" for the Halo videogame.  Dkt. 115 ¶ 15; Dkt. 115-6.  The Agreement purportedly provided that the work would remain ODS's property.  Dkt. 115 ¶ 15; Dkt. 115-6. The Agreement also set out a detailed compensation schedule, including twelve monthly payments of $3,750 starting June 1, 2000.  Dkt. 115-6.  ODS did not produce any documents suggesting the Agreement was ever implemented, such as invoices or receipts showing ODS or Bungie followed the compensation schedule.  Kumar Opp'n Decl. ¶ 13.

According to Mr. O'Donnell, around six weeks later, on May 1, 2000, Bungie hired him to become its Audio Director for videogame projects.  Dkt. 115 ¶ 16.

### 2.   Mr. O'Donnell's Microsoft Employment

Shortly after Bungie hired Mr. O'Donnell, Microsoft acquired Bungie.  On June 6, 2000, Microsoft offered Mr. O'Donnell the position of Audio Lead.  Dkt. 126-1.  His compensation would include salary, bonus, stock options, and relocation benefits.  *See id.*

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 3

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

According to Mr. O'Donnell, he became a Microsoft employee shortly after.  *See* Dkt. 115

¶ 18.  He was a Microsoft employee until around July 2007.  O'Donnell Dep. at 20:15-17.

As Audio Director at Bungie, Mr. O'Donnell was responsible "for [e]verything that had

to do with audio."  *Id.* at 19:25-20:14.  He "continued to do what [he] had been doing with

Bungie" when he became Audio Lead at Microsoft.  *Id.* at 43:17-44:3.  At Bungie, Mr.

O'Donnell understood that "[o]ne part of [his] duties [was] to provide music for our games."

Kumar Opp'n Decl. Ex. 2.  He "made the decisions about music, dialogue, voice over, actors,

sound design, the way it was implemented in the game and how it was finally mixed."

O'Donnell Dep. at 20:5-14.  However, Microsoft creative director Jason Jones retained ultimate

control over Mr. O'Donnell's decisions.  *Id.* at 107:13-19.

By the time the works for Halo 1 were completed in late 2001, Mr. O'Donnell had

worked as Audio Lead on Halo 1 at Microsoft for over a year.  *See id.* at 47:24-48:5.  Mr.

O'Donnell was a Microsoft employee throughout the Halo 2 work, which began in early 2002

and completed in fall 2004.  *Id.* at 80:13-81:3; Dkt. 115 ¶¶ 25-26.

### 3.  Development of the Halo Works

#### a.  Halo: Combat Evolved ("Halo 1")

When Mr. O'Donnell became a Microsoft employee, work for Halo 1 had not yet been

started.  O'Donnell Dep. at 106:19-107:12.[1]  And Mr. O'Donnell was still a Microsoft

employee when the works for Halo 1 were completed in November 2001.  *Id.* at 47:24-48:5.

The Halo 1 soundtrack was released even later, in June 2002.  Dkt. 115 ¶ 20.

As Audio Lead at Microsoft, Mr. O'Donnell was responsible for "everything that came

out of the speakers."  O'Donnell Dep. at 20:13.  He "did a bunch of stuff" for Halo 1 at a studio

built at Microsoft's Bungie site in Redmond.  *Id.* at 49:10-15.  Because Mr. O'Donnell was

---

[1] ODS may argue otherwise, showing this is, at minimum, a question of fact.  Specifically, ODS may claim that one of the 26 tracks on the Halo 1 soundtrack was "the original Halo theme" from the Myth soundtrack and was thus started before Mr. O'Donnell's employment with Microsoft, but the two are not the same:  The length of that Halo 1 track is almost 50% longer than the length of the Myth track.  Kumar Opp'n Decl. Ex. 8 ("ODS Dep.") at 174:25-175:18; *compare id.* Ex. 13 (track 26 listed as 4:22), *with* Dkt. 115 ¶ 14 (track listed as 3:02).  Further, Mr. O'Donnell testified in his deposition that he "didn't know" what music would be in Halo 1 and "hadn't really started working on … the game itself" when he began at Microsoft.  O'Donnell Dep. at 106:19-107:12.

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 4

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

working at Microsoft, Mr. Salvatori delivered his portions for Halo 1 to Mr. O'Donnell. Kumar Opp'n Decl. Ex. 4 ("Salvatori Dep.") at 22:22-23:3. Mr. Salvatori could not identify what pieces of music he worked on. *See id.* at 26:5-12. Mr. O'Donnell testified that ODS "retained everything" they had delivered to Microsoft, but ODS refused to produce in discovery the works it delivered for Halo 1 and over which it now claims authorship, even though Microsoft asked for it.[2] Kumar Opp'n Decl. ¶ 10 & Ex. 9 (RFP No. 33); O'Donnell Dep. at 218:9-14.

Although Bungie recognized ODS as an entity in its videogame credits, Microsoft did not. The credits for Halo 1 did not list "O'Donnell/Salvatori Music, Inc.," "Total Audio, Inc.," or any other ODS entity as having contributed to the videogame, although it recognized Mr. O'Donnell and Mr. Salvatori individually. *See* Dkt. 115-1 at 27.

### b. Halo 2

Mr. O'Donnell was a Microsoft employee when the works for Halo 2 began no earlier than late 2001 and completed in fall 2004. O'Donnell Dep. at 80:13-81:3. The first volume of the Halo 2 soundtrack was released in November 2004. Dkt. 115-1 ¶¶ 25-26. The second volume was released in 2006. *Id.* ¶ 26; Kumar Opp'n Decl. Ex. 5. The Copyright Office issued a certificate of registration for the Halo 2 soundtrack that stated the author was Microsoft and the work was made for hire. Kumar Opp'n Decl. Ex. 5. According to ODS, there were 32 compositions between both volumes of Halo 2. ODS Dep. 179:4-9; Kumar Opp'n Decl. Ex. 13. ODS testified that some of the Halo 2 compositions may have included co-writers other than Mr. O'Donnell or Mr. Salvatori. ODS Dep. 179:10-23.

As with Halo 1, Mr. O'Donnell was Audio Lead at Microsoft for Halo 2. In addition to working with Mr. Salvatori, Mr. O'Donnell, as Audio Lead, directed and helped produce music that other outside musicians contributed. O'Donnell Dep. at 82:4-17. As with Halo 1, ODS

---

[2] In its response to Microsoft's request, ODS claimed that all audio files "would have been captured by [forensic computer expert] David Stenhouse[] … and produced to Microsoft." Kumar Opp'n Decl. Ex. 9 (RFP No. 33). But Mr. Stenhouse *excluded* audio files from his search. *Id.* Ex. 10 ("Stenhouse Dep.") at 42:13-15, 76:14-78:3. ODS then committed to produce audio files, but the Halo 1 and 2 works were not among them. Kumar Opp'n Decl. ¶ 10.

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 5

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

refused to produce in discovery the works it delivered to Microsoft for Halo 2 and over which it now claims authorship, even though ODS "retained everything" and Microsoft requested these files.  Kumar Opp'n Decl. ¶ 10 & Ex. 9 (RFP No. 33); O'Donnell Dep. at 218:9-14.  Again, unlike Bungie, Microsoft did not recognize ODS as a separate entity in the credits for Halo 2.  The credits did not list ODS, Total Audio, or any other ODS trade name or entity, but rather credited Mr. O'Donnell and Mr. Salvatori as individuals.  Dkt. 115-2 at 30-31.

### c.    Halo 3, Halo 3: ODST, and Halo: Reach

ODS concedes the works it delivered to Microsoft for Halo 3, Halo 3: ODST, and Halo: Reach were works made for hire under ODS's written agreements with Microsoft.  In a footnote, however, ODS claims authorship over "musical elements" that were "carried over" from Halo 1 and Halo 2, for which ODS is still the author.  *See, e.g.*, Dkt. 140 at 3 n.5.  ODS does not identify what "musical elements" it is referring to, nor has its proposed music expert (whose testimony should be excluded for the reasons Microsoft identified in its motion, Dkt. 132) attempted any such effort.

### 4.    Microsoft's Counterclaim

On March 10, 2020, ODS filed this case in state court, asserting only state-law claims.  Dkt. 1-3.  Microsoft removed the case when, in response to Microsoft's motion for partial judgment on the pleadings, ODS disputed Microsoft's status as the "author" of the works that it delivered to Microsoft under the Copyright Act.  In removing, Microsoft asserted a counterclaim, seeking a declaration that Microsoft is the author of every musical composition and sound recording that ODS delivered to Microsoft under the ICA and Amendments, under the work for hire doctrine.[3]  *See* Dkt. 1-9.  ODS now seeks summary judgment on this counterclaim.

---

[3] Under the Copyright Act, an author, as opposed to a copyright owner, owns the copyright and has additional rights separate and distinct from ownership.  *See, e.g.*, 1 Nimmer on Copyright § 5.03[A] (2021) (explaining significance of authorship and why "it is vital … to determine whether a work has been made for hire").

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 6

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**B.      Undisputed Material Facts Relevant to ODS's Good Faith and Fair Dealing Claim**

Microsoft has moved for summary judgment on ODS's claim for breach of the duty of good faith and fair dealing (as well as on ODS's other claims).  Dkt. 125 at 16-24.  In that motion, Microsoft detailed the undisputed material facts relevant to the implied duty claim, including the relevant terms of the ICA and the parties' long contracting history.  *Id.* at 2-6.  In the interest of efficiency, Microsoft incorporates those facts here and does not restate them.

ODS's statement of the facts is replete with mischaracterizations of the ICA.  By way of example and as Microsoft explained in its summary judgment motion, ODS requested, and Microsoft rejected, a term in the Third Amendment that would have required Microsoft to pay royalties for its own exploitation of the works ODS delivered, regardless whether Microsoft obtained any revenue for those exploitations.  Dkt. 125 at 4-5.  Instead, Microsoft insisted and the parties limited any royalty obligations to instances in which Microsoft actually received revenue.  *Id.*  Similarly, in 2009, ODS proposed language that would have required Microsoft to "promptly prepare and file the applicable cue sheets" for registrations with performing rights organizations.[4]  *Id.* at 5:19-24.  Microsoft rejected that.  *Id.* at 5:25-26.  And while ODS contends that "Microsoft knowingly and intentionally failed to register ODS musical compositions with industry organizations," Dkt. 140 at 1, including "works ODS composed in their entirety," *id.* at 12, Mr. O'Donnell, testifying on behalf of ODS, admitted that Microsoft had properly registered all the works ODS delivered under the ICA.  Dkt. 125 at 19:22-25.

In addition to these misrepresentations of the ICA, ODS misleadingly states that "[o]nly the publisher (Microsoft) can register … works" with performing rights organizations.  Dkt. 140 at 12:9-11; *see also id.* at 16:4-5 ("Microsoft had sole control over the registration of the ODS' work and derivative works[.]").  But again, both Mr. O'Donnell and Mr. Salvatori *repeatedly* admitted they handled registrations themselves.  *See, e.g.*, O'Donnell Dep. at 225:5-

---

[4] In passing, ODS claims that Microsoft should have registered certain works with "ASCAP and BMI." Dkt. 140 at 17.  But ODS does not deny that each writer can be registered with only one performing rights organization—not both—and that Mr. O'Donnell and Mr. Salvatori are currently registered with ASCAP only.  *See* Salvatori Dep. at 11:13-18, 53:5-54:2; O'Donnell Dep. at 15:1-8.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

9 & Dkt. 126-24 ("I looked at it and saw that it hadn't been registered with ASCAP.  So I went

ahead and did it.  I told Mike to do it or asked Mike to do it."); O'Donnell Dep. at 215:23-

216:23 & Kumar Opp'n Decl. Ex. 14 ("So we knew that Microsoft was probably not going to

register it …. So I was just like, Mike, let's just make sure we register this now, you and I are

the writers, Microsoft is the publisher …."); O'Donnell Dep. at 216:24-217:6 ("My memory is

that we—Mike and I registered all of them.  Most likely Mike."); Salvatori Dep. at 114:9-

115:22 & Kumar Opp'n Decl. Ex. 14 ("I'm 99.9 percent sure that I registered it.").  Moreover,

ODS's music attorney acknowledged "instances … of the composers registering the works"

when "the copyright owner doesn't register the compositions."  Kumar Opp'n Decl. Ex. 7

("Charne Dep.") at 71:5-9.

ODS makes other factual misrepresentations, too.  In particular, ODS claims "Microsoft

refused to allow Showtime … to use the iconic chant and other ODS music[.]"  Dkt. 140 at 12.

ODS cites nothing to support this statement, and nor could it, as the evidence confirms

Microsoft did license the music created for Halo to Showtime.  *See* Dkt. 125 at 23.  But ODS

may not create facts, or issues of fact, by virtue of lawyer statements in their briefs.  "Legal

memoranda and oral argument, in the summary-judgment context, are not evidence, and do not

create issues of fact capable of defeating an otherwise valid motion for summary judgment."

*Flaherty v. Warehousemen, Garage & Serv. Station Emps. Loc. Union No. 334*, 574 F.2d 484,

486 n.2 (9th Cir. 1978).

### III.    ARGUMENT

Summary judgment is proper if the moving party establishes that there are no disputes

over material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a).  "[T]he judge must view the evidence in the light most favorable to the nonmoving

party[.]"  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contactors Ass'n*, 809 F.2d 626, 630-31 (9th Cir.

1987).  ODS has not met this standard, and the Court should deny its motion.

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 8

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**A.    The Court Should Deny Summary Judgment for ODS on Microsoft's Counterclaim Concerning Authorship.**

Under the Copyright Act, copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a).  But if a work is made "for hire," "the employer or other person for whom the work was prepared is considered the author."  *Id.* § 201(b).  A work can be a "work for hire" if it is prepared by (1) "an employee within the scope of his or her employment" or (2) a contractor as "a work specially ordered or commissioned for use as a contribution to a collective work."  *Id.* § 101.  There are genuine issues of material fact as to whether the works that ODS delivered for Halo 1 and Halo 2 are works made for hire because Mr. O'Donnell created and completed them while employed by Microsoft, and because ODS and Microsoft agreed, in writing, that the works would be made for hire.  And to the extent ODS seeks summary judgment on Microsoft's counterclaim as to the later Halo games, on the theory ODS is the author of unidentified "musical elements" "carried over" into those games, ODS has neither sufficiently briefed that argument nor shown an absence of fact issues.

**1.    There are genuine issues of fact as to whether Mr. O'Donnell's Microsoft employment makes Halo 1 and 2 works for hire.**

ODS does not dispute that Mr. O'Donnell was a Microsoft employee when the bulk of the work was done for both Halo 1 and Halo 2.  Instead, ODS disputes that the works were created within the scope of his employment, on the basis that there is a distinction between Mr. O'Donnell's role as Audio Lead, and ODS's role as a "contractor for the compositions it created for the *Halo* series."  Dkt. 140 at 6:15-18.  Mr. O'Donnell also tries to distance his role of Audio Lead from that of composer.[5]  Dkt. 115 ¶ 16.

The terms "employee" and "scope of employment" are "understood in light of the general common law of agency."  *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d

---

[5] Contrary to ODS's assertions, Microsoft does not "recognize[] that the works listed in the [Confirmatory Agreement] … were… created by ODS and not … Mr. O'Donnell[.]"  Dkt. 140 at 22.  The Agreement reserved Microsoft's right to authorship under the work for hire doctrine and did not recognize authorship rights in ODS or Mr. O'Donnell.  *See* Kumar Opp'n Decl. Ex. 3 ("Confirmatory Agreement") ¶ 3 ("This Agreement is in no way intended to limit or interfere with any of the rights to which [Microsoft] is entitled under U.S. Copyright law (including without limitation the 'work-made-for-hire' doctrine) with respect to the services of any bona fide employee.").

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 9

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1009, 1015 (9th Cir. 2012) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-41 (1989)).  The Supreme Court has looked for guidance to the Restatement (Second) of Agency, under which a work is made in the scope of employment if it "(a) is of the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) is actuated, at least in part, by a purpose to serve the [employer]." *Id.* (alterations in original).  Genuine issues of material fact preclude holding that the Halo 1 and Halo 2 works fall outside the scope of Mr. O'Donnell's employment with Microsoft.

      a.     **The work was of the kind that Mr. O'Donnell was employed by Microsoft to perform.**

As to the first element, Mr. O'Donnell understood that preparing compositions and sound recordings was the kind of work that Bungie and Microsoft employed him to perform. In a journal entry produced by ODS, Mr. O'Donnell wrote, "I believe that my salary and compensation pays for my performance as Audio Director at Bungie.  One part of my duties is to provide music for our games."  Kumar Opp'n Decl. Ex. 2; O'Donnell Dep. at 107:21-108:11 (discussing exhibit).  Further, ODS had been broadly engaged to provide "complete sound design, foley work and music composition/production" in its purported agreements with Bungie, further confirming that compositions and music recordings fell within the same realm as sound design and other audio work.  *See* Dkt. 115-6.

Anticipating this, ODS relies on a self-serving declaration from Mr. O'Donnell, which claims that the role of Audio Director "was entirely different from being a composer of original music works for use within a game."  Dkt. 115 ¶ 16.  But Mr. O'Donnell did not wear a "Microsoft" hat when he was a Microsoft employee and an "ODS" hat when he was an ODS employee.  Instead, he was responsible for "[e]verything that had to do with audio," and Bungie and Microsoft trusted his judgment as to what that comprised—whether composing music, preparing sound recordings, executing the sound design, or even providing vocalizations for "Jackals, Hunters, & Flood."  O'Donnell Dep. at 20:11-12; *see, e.g.*, Dkt. 115-2 at 31 (crediting Mr. O'Donnell under "Artificial Intelligence Cast").  When he was a Bungie employee, Mr.

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 10

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

O'Donnell "made up the … title and the job description," and when he was a Microsoft employee, he "continued to do what I had been doing with Bungie." O'Donnell Dep. at 19:25-20:4, 43:17-44:17. Indeed, Mr. O'Donnell's own notes identified himself individually, not ODS, as the "project lead" for the "Original Soundtracks" released for the first five Halo games. Kumar Opp'n Decl. Ex. 15.

ODS has not provided any documents showing any agreement between Microsoft and Mr. O'Donnell that allowed him to carve out a portion of his job duties to claim he performed those services as an ODS employee, rather than as a Microsoft employee—even though Microsoft's discovery requests called for such documents. *See* Kumar Opp'n Decl. ¶ 14 & Ex. 12 (RFP No. 8). At a minimum, then, there is a genuine dispute of material fact over whether preparing the Halo 1 and Halo 2 works was the kind of work that Microsoft employed Mr. O'Donnell to perform.[6]

> **b.** **The work occurred substantially within the authorized time and space limits.**

"When there is evidence that the employee's creation was the 'kind of work' the employee was employed to perform, courts have tended to put little weight on evidence that 'the work was done at home on off-hours.'" *U.S. Auto Parts*, 692 F.3d at 1018 (citation & internal quotation marks omitted); *see also Avtec Sys., Inc. v. Peiffer*, 21 F.3d 568, 571-72 (4th Cir. 1994) (collecting cases). The evidence supports that Mr. O'Donnell prepared and continued developing the works for Halo 1 and Halo 2 "within the authorized time and space limits" (e.g., during work hours and at his work site). *U.S. Auto Parts*, 692 F.3d at 1015. He testified that for Halo 1, "[t]here was a studio built in [Microsoft's] Bungie site in Redmond that I did a bunch of stuff at[.]" O'Donnell Dep. at 49:10-15. Both he and Mr. Salvatori also testified there were live recordings at Studio X in Seattle. *Id*. at 195:1-12; Salvatori Dep. at 21:21-22:8. Studio X was a studio that was "possibly" rented by Microsoft. *See* O'Donnell

---

[6] ODS claims that the parties "surely" would have acknowledged in the ICA Mr. O'Donnell's work on the Halo music as a Microsoft employee. Dkt. 140 at 21. But ODS provides no basis for this proposition. And the opposite inference is equally reasonable—the parties did not feel the need to state the obvious, as Mr. O'Donnell had already been working as a Microsoft employee for over two years.

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 11

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Dep. at 273:8-11.  This element is therefore met, or at a minimum, issues of material fact exist.

c.      **The work was actuated, at least in part, to serve Microsoft.**

The work-actuated element is met when evidence supports that the work serves a purpose of the business.  *See U.S. Auto Parts*, 692 F.3d at 1018-19.  For example, when an employer's business was to "generat[e] aesthetically-pleasing paper products featuring original artwork," this prong was met when that was also "the primary purpose of [the employee's] employment."  *Carol Wilson Fine Arts, Inc. v. Zifen Qian*, 71 F. Supp. 3d 1151, 1156 (D. Or. 2014), *aff'd*, 671 F. App'x 701 (9th Cir. 2016).  One relevant consideration is whether the employer had "control and direction" over the employee's work.  *Id.*

Here, the works were prepared for use in Microsoft's Halo 1 and Halo 2 videogames. Mr. O'Donnell testified "I knew that I was working for Microsoft and I had to keep Microsoft happy."  O'Donnell Dep. at 105:2-3.  ODS does not argue the works were prepared for another purpose, such as Mr. O'Donnell's own use or use in another game.  Indeed, ODS produced documents showing Mr. O'Donnell understands the work for hire doctrine.  In an e-mail to himself, Mr. O'Donnell wrote, "[i]f you are an employee, and what you create is done as a part of your employment, then your employer, not you, owns all the rights.  That is a consequence of the 'works made for hire' doctrine in copyright law."  Kumar Opp'n Decl. Ex. 6.  He distinguished this from a situation where "if you've written a novel or a computer application in your spare time, and that isn't your job, you, not your employer, own those rights."  *Id.* Under his own understanding, the works for Halo 1 and Halo 2 fall in the first category.

Further, Microsoft had ultimate control over the Halo 1 and Halo 2 works.  Although Mr. O'Donnell made decisions about the music used in the games, he testified that creative director Jason Jones could have overridden his decisions and said, at any moment, "Marty, I don't like any of that music, let's start over from scratch."  O'Donnell Dep. at 107:14-19. Whether Mr. Jones actually overrode Mr. O'Donnell's decisions is irrelevant.  *See, e.g.*, *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 642 (2d Cir. 2004) ("[T]he absence of a hiring party's ***exercise*** of control does not

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 12

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

mean that an artist is not an employee where other factors weigh in favor of finding an employment relationship."). Mr. O'Donnell also testified that Bungie later split off from Microsoft because "as a group we enjoyed being able to make our own creative decisions and not being dictated to by corporate people." O'Donnell Dep. at 20:24-21:6, 21:12-14.

### 2. Regardless, the Halo 1 and Halo 2 works are works for hire because Microsoft specially commissioned them.

Even if the scope of Mr. O'Donnell's employment with Microsoft were otherwise (and it was not), Microsoft would still be the author because ODS and Microsoft agreed the works that ODS delivered would be works made for hire under the second definition in § 101. Under that definition, a work qualifies as one made for hire if it is "specially ordered or commissioned for use … as a part of a[n]… audiovisual work" and "the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101. There is no dispute that the works were specially commissioned for an audiovisual work. *See generally* Dkt. 140 at 5-6, 19-23. The dispute is over the written instrument requirement.

ODS argues that for a work to be a work for hire, it must have been created after the execution of the written agreement. *Id*. at 20-21. In other words, ODS asks the Court to second-guess the agreement it made with the advice of sophisticated music counsel because, according to it: (a) the works for Halo 1 were created before the parties signed the ICA; (b) the ICA allegedly did not cover the Halo 2 works; and (c) the Confirmatory Agreement is not a valid work for hire agreement covering Halo 2, because it was signed after the Halo 2 works were created. *Id*. at 20-23. But the Copyright Act does not require the parties to sign the written agreement before the work is created for a work for hire agreement to be effective. Although there is a circuit split, the Court should follow the Second Circuit in holding that a written instrument under § 101 can be signed after the work is created if it memorializes the parties' agreement. The Halo 1 works qualify because the ICA memorializes the parties' agreement that they do. The Halo 2 works qualify because they are subject to the ICA, and the

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 13

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Second Amendment and Confirmatory Agreement memorialize the parties' agreement they would be works for hire.

### a. A written instrument that memorializes a work for hire agreement can be signed after the work is created.

Circuit courts are split as to whether § 101 requires the parties sign a writing before the creation (or completion) of the work. *Kid Stuff Mktg., Inc. v. Creative Consumer Concepts, Inc.*, 223 F. Supp. 3d 1168, 1179 (D. Kan. 2016). The Seventh Circuit has adopted a bright-line rule requiring the parties to sign a work for hire before the work is created. *Id.* (discussing *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410 (7th Cir. 1992)). But in *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 559 (2nd Cir. 1995), the Second Circuit disagreed, holding "the writing requirement could be met by a writing executed after the work is created, if the writing confirms a prior agreement, either explicit or implicit, made before the creation of the work."[7] *Kid Stuff Mktg.*, 223 F. Supp. 3d at 1180 (discussing *Playboy*). Other district courts have adopted the rule from *Playboy. See id.* at 1180-81; *TMTV, Corp. v. Mass Prods., Inc.*, 345 F. Supp. 2d 196, 206-07 (D.P.R. 2004), *aff'd*, 645 F.3d 464 (1st Cir. 2011); *Campinha-Bacote v. Rearden*, 2011 WL 1343343, at *3 (D. Alaska Apr. 8, 2011); *Looney Ricks Kiss Architects, Inc. v. Bryan*, 2010 WL 4068885, at *6 (W.D. La. Oct. 14, 2010).

The leading copyright treatise, Nimmer, also criticizes the Seventh Circuit's rule. *See generally* 1 Nimmer on Copyright § 5.03[B][2][b]. Although there might be situations "in which third parties would be unfairly surprised by after-the-fact declarations of work for hire status," there will also be "claims involving parties each of whom knew of the unanimous intent among all concerned that the work for hire doctrine would apply," even if the agreement

---

[7] The Second Circuit's recent decision in *Kauffmann* is distinguishable. *Estate of Kauffmann v. Rochester Inst. of Tech.*, 932 F.3d 74 (2d Cir. 2019). In *Kauffmann*, the court declined to extend *Playboy* where the writer had contributed numerous articles to a magazine for 55 years, the parties' actions were inconsistent as to whether the writer or the magazine was the author, and the parties never "formalized any understanding" about work made for hire status until they signed a letter agreement executed near the end of their relationship and five years after the disputed works were created. *Id.* at 75-76. In contrast, the ICA was executed less than a year after the works for the Halo 1 videogame were completed and only two months after the works for the Halo 1 soundtrack were completed, and Microsoft and ODS's actions are consistent with their intent that the works were made for hire. *See generally infra.* The works for Halo 2 were created after the ICA and are also covered by that instrument.

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 14

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

had not yet been fully executed. *Id.* "In that latter circumstance, [a] bright line rule could frustrate the intent of the parties, and cloud rather than serve the goal of certainty." *Id.*

In *Playboy*, a freelance artist produced artwork published in *Playboy* magazine. 53 F.3d at 552. The artist submitted each piece of art to Playboy, Playboy sent a check to the artist for each work, and the checks contained a legend stating that by endorsing the check, the payee "acknowledges payment in full for the services rendered on a work-made-for-hire basis in connection with the Work named on the face of this check." *Id.* Even though the artist did not sign the checks until after creating the work, the court concluded that the endorsed checks met the written instrument requirement. *Id.* at 560. The court explained that the parties' continued use of the legend was "sufficient to show that they intended a work-for-hire relationship." *Id.* Playboy's use of the legend showed it intended a work made for hire relationship, and the artist's pre-creation consent could be inferred from his continued endorsements. *Id.*

ODS relies heavily on an unpublished Ninth Circuit case, but that reliance is misplaced. *See* Dkt. 140 at 19-20 (citing *Gladwell Gov't Servs., Inc. v. County of Marin*, 265 F. App'x 624 (9th Cir. 2008)). *Gladwell* stated, without analysis, that a work made for hire under § 101 could only be made after the parties executed an express agreement. *Id.* at 626. *Gladwell* incorrectly cites *Playboy* for this proposition, *see id.*, but *Playboy* held the writing requirement can be met "by a writing executed after the work is created, if the writing confirms a prior agreement, either explicit or implicit, made before the creation of the work." *Playboy*, 53 F.3d at 559. Further, nothing in *Gladwell* suggests the parties had even discussed the work before creation, let alone intended it to be a work for hire. *See generally* 265 F. App'x 624. The Court should assign little persuasive value to this non-precedential and conclusory opinion.

**b.    There is a genuine issue of fact whether the ICA memorializes the parties' intent for the Halo 1 works to be made for hire.**

There are, at a minimum, questions of fact whether the Halo 1 works are works for hire. ODS delivered the works in October 2001, and the Halo 1 soundtrack was released on June 11, 2002. Dkt. 14 ("Compl.") Ex. A ("ICA") Part I; Dkt. 115 ¶ 20. Two months later, the parties

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 15

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

executed the ICA, under which "[ODS] agrees that the WORK is done as a 'work for hire' as that term is defined under U.S. copyright law, and that as a result, MS shall own all copyrights in the WORK."  ICA Part II § 3.

ODS argues the ICA does not qualify as a written instrument under § 101 because it was executed after the work was created.  But under *Playboy*, the Court should look to whether the parties intended to enter a work made for hire agreement that they simply memorialized in writing later.  *See* 53 F.3d at 559.  And here, they did.

ODS urges the Court to rely on the March 22, 2000, license agreement that ODS purportedly executed with Bungie, which states the works ODS was creating for Halo "shall remain the property of" ODS.  Dkt. 140 at 20; Dkt. 115-6.  But ODS has not produced any evidence suggesting Microsoft was aware of, much less assumed, the obligations of that contract, or that Microsoft (or Bungie) made the payments specified, which were to begin June 1, 2000.  Dkt. 115-6; Kumar Opp'n Decl. ¶ 13.  Instead, in June or July 2000, Microsoft acquired Bungie.  Dkt. 126-1.  And Microsoft's relationship with ODS was governed exclusively by the ICA—which expressly states the works are works made for hire and makes clear that it is the only agreement between Microsoft and ODS.  *See* ICA Part II §§ 3, 9.7.

The parties' conduct further supports they intended the Halo 1 works to be works for hire.  *See Playboy*, 53 F.3d at 560.  For example, Jim Charne, ODS's music counsel who negotiated several ICA amendments, testified that in the videogame industry, music was treated in "the same way they were treating artwork or computer code, which is contracting for it on like a work-made-for-hire basis."  Charne Dep. at 24:23-25:14.  Further, Bungie credited ***ODS as an entity*** with authorship in its games, separately from its recognition of the individual writers.  *See, e.g.*, Dkt. 115-3 at 51 (crediting Sound & Music Design to "O'Donnell/Salvatori Music, Inc.," Mr. O'Donnell, Mr. Salvatori, and Paul Heitsch); Dkt. 115-4 at 77 (crediting "Total Audio, Inc.," Mr. O'Donnell, Mr. Salvatori, and Mr. Heitsch).  In contrast, Microsoft did not credit "O'Donnell/Salvatori Music, Inc.," "Total Audio, Inc.," or any other ODS entity with any role, let alone authorship, for Halo 1 or Halo 2.  Instead, Microsoft credited Mr. O'Donnell

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 16

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    and Mr. Salvatori individually as writers.  Dkt. 115-1 at 27 (Halo 1); Dkt. 115-2 at 30-31 (Halo

2    2).  At a minimum, then, genuine issues of material fact remain regarding the parties' intent.

3    *See, e.g.*, *Playboy*, 53 F.3d at 560 (reviewing evidence at trial related to "the intent of the

4    parties before the creation of the works" and concluding this was "sufficient to show that they

5    intended a work-for-hire relationship").

6                            **c.    There is a genuine issue of fact whether the ICA memorializes
                                     the parties' intent for the Halo 2 works to be made for hire.**

7

8            Unlike the Halo 1 works, ODS completed the Halo 2 works after the parties executed

9    the original ICA, so the original agreement satisfies the written instrument requirement for a

10   work for hire.  *See* ICA Part I at 2 (ICA signed Aug. 28, 2002); O'Donnell Dep. 80:24-81:3

11   (Halo 2 works completed in fall 2004).  ODS argues, however, the original ICA does not

12   govern the creation of the Halo 2 works.  Dkt. 140 at 21-23.  This contradicts the agreement's

13   express language and the parties' course of performance.

14           ODS claims the definitions of "WORK" and "Game" "concerned only *Halo: Combat

15   Evolved.*"  *Id*. at 21:11-13.  But the original ICA broadly defined the "WORK" as "manag[ing]

16   all aspects of creation and delivery of certain audio compositions for the software game Halo

17   ('Game') including the Halo theme and other incidental music."  ICA Part II § 1; ICA Part I.

18   ODS argues because Halo 2 was already underway, and the definitions for "WORK" and

19   "Game" do not expressly reference "Halo 2," the parties did not intend the ICA to include the

20   Halo 2 works.  Dkt. 140 at 21:11-13.  But the original agreement referred to "Halo"—not any

21   one game—and one could as easily draw the opposite conclusion:  Because Halo 2 was already

22   underway and the definitions for "WORK" and "Game" did not specify "Halo: Combat

23   Evolved" (the title for Halo 1), the parties intended to include the WORKS for Halo: Combat

24   Evolved, Halo 2, and any other Halo games.  These terms are, at best, "fairly susceptible to two

25   different, reasonable interpretations" and thus "left to the trier of fact to interpret."  *In re

26   Microsoft Partner Program Litig.*, 2006 WL 1348390, at *5 (W.D. Wash. May 16, 2006)

27   (quoting and citing *Wm. Dickson Co. v. Pierce County*, 128 Wn. App. 488, 493 (2005)).

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 17

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

ODS argues because the original ICA acknowledges the "WORK" was delivered, invoiced, accepted, and paid on October 1, 2001, "WORK" could only mean Halo 1.  Dkt. 140 at 21:11-13.  This notation appears in the original ICA's "Delivery" section.  ICA Part I.  The "Delivery" section, however, captures only one of ODS's deliveries to Microsoft.  For example, ODS later put together and mastered pieces for release in the Halo 1 soundtrack.  O'Donnell Dep. at 50:2-14.  Yet that is not reflected in the "Delivery" section, even though that delivery was also made under the ICA.

The parties' course of performance also contradicts ODS's argument that the original ICA does not cover the Halo 2 works.  After the original ICA, the parties executed the Second Amendment, which clarified the parties' understanding that the terms "WORK" and "Game" under the original ICA included both Halo 1 and Halo 2.  Compl. Ex. C ("Second Amendment") § 2.  This clarification memorialized the parties' understanding that the ICA, including its work-for-hire provision, covered Halo 2.  The Second Amendment also required Microsoft to pay "the following ***outstanding royalties for the Halo 2 Soundtrack***" to ODS.  *Id.* § 5 (emphasis added).  It included a table showing the "outstanding" royalties that had accumulated for the Halo 2 soundtrack, which used the percentage royalties from the original ICA and First Amendment.  Compare *id.*, with ICA Part I § 1(iii) & Compl. Ex. B ("First Amendment")  § 1.  The characterization that royalties for Halo 2 were "outstanding" confirms the parties' understanding that the original ICA covered Halo 2, even ***before*** the Second Amendment.  This course of performance, at a minimum, creates a question of fact whether the original ICA included the works for Halo 2, and whether, as a result, Microsoft is their author.  *See, e.g.*, *Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 78 (9th Cir. 1996) (directing trier of fact to determine parties' intent, observing "course of performance under a contract 'is to be given great weight' in interpreting an ambiguous contract") (quoting *Laborers Health & Welfare Tr. Fund v. Kaufman & Broad*, 707 F.2d 412, 418 (9th Cir. 1983)), *as am. on denial of reh'g* (Oct. 2, 1996).

Finally, even if ODS is correct that the original ICA does not govern the Halo 2 works,

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 18

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the Second Amendment (which undisputedly does) as well as its attachment, the Confirmatory

Work-Made-for-Hire and Backup Assignment Agreement, each satisfies the written instrument

requirement of the work for hire doctrine.  The Second Amendment, through its clarification of

what the ICA governs, removes any ambiguity that the Halo 2 works are works for hire.

Second Amendment Recitals ¶ 2 & § 2.  So, too, does the Confirmatory Agreement, which

confirmed the parties' " original intent that the WORK shall be deemed a 'work made for hire'"

for Microsoft and that Microsoft "shall be deemed for all purposes to be the author of the

WORK from the moment of creation."  Confirmatory Agreement at 1.  Thus, the Second

Amendment and Confirmatory Agreement also satisfy the written instrument requirement

because they expressly memorialize the parties' understanding that Halo 2 works were made

for hire.

**3.**  **ODS is not the author of "musical elements" "carried over" from Halo 1 and 2 works to later works.**

In a footnote in its fact section, ODS states that it "does not dispute that" Microsoft is

the author of "music it composed and recorded for Halo 3 (2007), Halo 3: ODST (2009) and

Halo: Reach (2010)," "save for the musical elements that carried over from The Halo: Combat

Evolved and Halo 2 works such as the monk chant."  Dkt. 140 at 3 n.5.  "Arguments raised

only in footnotes, or only on reply, are generally deemed waived."  *Matson v. UPS, Inc.*, 2018

WL 3608396, at *8 (W.D. Wash. July 26, 2018) (refusing to consider "footnoted motion-

within-a-motion").  The Court should therefore deny summary judgment for ODS on

Microsoft's counterclaim as to the later works on this basis, alone.  But even if the Court were

to consider this argument, the Court should deny ODS's motion because (a) there are questions

of fact concerning what "elements" were "carried over"; (b) authorship does not subsist in

"musical elements"; and (c) Mr. O'Donnell's declaration is improper expert testimony.

**a.**  **There are questions of fact concerning what "musical elements" "carried Over" to later works.**

Even if the carryover of "musical elements" from a preexisting work could somehow

relate to authorship of the new work under the Copyright Act, there are, at a minimum,

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 19

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

questions of fact as to what those elements are.  ODS does not provide the Court the soundtrack files or videogame recordings it delivered to Microsoft, nor did it produce them in discovery, despite Microsoft's requests.  *See* Kumar Opp'n Decl. ¶ 10.  Instead, it provides Mr. O'Donnell's conclusory opinion that "many of the musical elements, ***for example***, the Monks chant and melody, were carried over from Halo: Combat Evolved to Halo 2."  Dkt. 115 ¶ 30 (emphasis added).  Similarly, he attests that specified later works include "musical elements that had been composed and recorded by ODS prior to the execution of the [ICA]."  *Id.* ¶ 31; *see also id.* ¶ 32 ("Other ODS works from the original Halo releases … recur in Halo franchise entries to this day.").  Again, Mr. O'Donnell does not specify what these "elements" are, where they appear, or who composed them.  The record does not permit the Court to rule on what "musical elements" appear where, and thus, under ODS's theory, who authored them.

> **b.  Even if later works include "musical elements" from works that ODS authored, ODS is not the author of the later works.**

In any event, the author of a preexisting work whose "musical element" is incorporated into a new work is not the "author" of the new work.  "Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression[.]"  17 U.S.C. § 102(a).  A derivative work is a "work" under the Copyright Act. *See, e.g.*, *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1078 (9th Cir. 2000) ("'[O]riginal works of authorship' include not only underlying (preexisting) works but also derivative works and compilations.").  Thus, a derivative work has its own author and its own copyright.  *See* 17 U.S.C. § 103(b) ("The copyright in a … derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work ….").  Accordingly, "there is no basis in the Copyright Act to declare Plaintiffs authors of the allegedly derivative or infringing work" merely because the new work copies portions of the original one.  *Smith v. Weeknd*, 2019 WL 6998666, at *5 (C.D. Cal. Aug. 23, 2019) (emphasis added).  So, even if later works incorporate "musical elements" from the Halo 1 and Halo 2 works, that is of no moment: Microsoft remains the author of the works.

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 20

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

### c. The Court should exclude Mr. O'Donnell's improper expert testimony about similarity of elements.

2

Finally, to the extent ODS purports to use Mr. O'Donnell's testimony to show that

3

Microsoft allegedly copied the ODS-delivered works, the Court should strike the testimony.

4

ODS did not disclose Mr. O'Donnell as an expert, and the time to do so has long since passed.

5

As Microsoft explained in its motions for summary judgment and to exclude the

6

testimony of Prof. Salzman, proof of copying requires showing the new and old works are

7

"substantially similar." Dkt. 125 at 12:1-11; *see generally* Dkt. 132. This, in turn, requires

8

applying the "extrinsic test," which ODS agrees "requires … expert testimony." *Swirsky v.*

9

*Carey*, 376 F.3d 841, 845 (9th Cir. 2004) (citation & internal quotation marks omitted), *as am.*

10

*on denial of reh'g* (Aug. 24, 2004); *see also* ODS Dep. at 132:15-133:5 ("[A]t some point

11

hopefully we'll get … a music expert, to define all that stuff."); O'Donnell Dep. at 229:3-6 ("I

12

have a feeling we're going to need to get expert witnesses in to define [musical arrangements of

13

prior works] ….").

14

To the extent ODS purports to present Mr. O'Donnell's declaration to prove copying,

15

the Court should reject it, striking Paragraphs 11, 12, 25, 30, 31, and 32. The deadline for

16

expert disclosures was October 18, 2021, Dkt. 80, yet ODS provided this declaration more than

17

two months later. A party must submit its expert witness disclosures "at the times and in the

18

sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C). "Rule 37(c)(1) gives teeth to this

19

requirement by automatically excluding any evidence not properly disclosed under Rule

20

26(a)." *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 498 (9th Cir. 2009)

21

(citation & internal quotation marks omitted). If the failure to disclose was substantially

22

justified or harmless, exclusion is improper. *Id.* Here, ODS cannot possibly show its failure is

23

substantially justified or harmless. ODS has known since the inception of the case about Mr.

24

O'Donnell's alleged expertise, *and* that expert testimony would be required. *Touve v. Harold*

25

*David Story, Inc.*, 2021 WL 4245375, at *2 (D. Or. Sept. 17, 2021) (no justification where

26

party had long known about expert witness). And the failure is not harmless, as Microsoft did

27

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 21

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

not question Mr. O'Donnell as if he were an expert, which he admits is needed to opine on

musicological similarities, Dkt. 125 at 12, and did not retain its own music expert to respond to

Mr. O'Donnell's statements, relying on ODS's representation that its music expert was

Professor Salzman, *Touve*, 2021 WL 4245375, at *2 (failure not harmless where party could

not take deposition of late disclosed expert).

### B.   The Court Should Retain Supplemental Jurisdiction.

The Court should retain supplemental jurisdiction over ODS's remaining state law

claims, mere months before trial.[8]  Notably, the Court in September 2020 stated "nothing in this

order precludes ODS from filing a motion to dismiss the counterclaim or to address the issue of

supplemental jurisdiction over ODS's state claims."  Dkt. 23 at 5:15-17.  ODS chose not to do

so, and the Court is now deeply familiar with the facts and issues in this case, has presided over

numerous discovery disputes, held several arguments and conferences, and set a trial date that

is less than two months away by the time the Court hears argument on ODS's motion.  As

discussed above, ODS cannot obtain summary judgment on Microsoft's counterclaim, much

less as to all works, as genuine fact disputes remain.  Moreover, as Microsoft's motion for

summary judgment makes clear, the Court will need to decide questions of federal copyright

law that implicate federal policy to rule on ODS's remaining state law claims.  Dkt. 125 at

12:1-13:1.  The Court should retain jurisdiction over those claims.

Even when all federal claims have been resolved, a district court may still retain

supplemental (also known as pendent) jurisdiction over remaining state law claims.  *Schneider

v. TRW, Inc.*, 938 F.2d 986, 994 (9th Cir. 1991).  "Supplemental jurisdiction is not destroyed by

elimination of the basis for original jurisdiction."  *Albingia Versicherungs A.G. v. Schenker

Int'l Inc.*, 344 F.3d 931, 938-39, *opinion am. & superseded on denial of reh'g*, 350 F.3d 916

(9th Cir. 2003).  "The decision to exercise jurisdiction over supplemental claims is a

---

[8] ODS does not address, let alone dispute, that the Court has supplemental jurisdiction over its state law claims.
Nor could it.  Those claims derive from a common nucleus of facts comprising the same parties, the same ICA and
its amendments, the same negotiation of the ICA and its amendments, and the same works that are the subject of
Microsoft's counterclaim.  *See* 28 U.S.C. § 1367(a) (district courts have supplemental jurisdiction over state law
claims that are "so related … that they form part of the same case or controversy" as a federal claim).

discretionary one, and a court weighs the 'values of judicial economy, convenience, fairness, and comity' in making that decision." *Union Station Assocs., LLC. v. Puget Sound Energy, Inc.*, 238 F. Supp. 2d 1226, 1230 (W.D. Wash. 2002) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[T]he argument for exercise of pendent jurisdiction is particularly strong" in "situations in which the state claim" is "closely tied to questions of federal policy." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966).

The Ninth Circuit has "consistently upheld decisions to retain pendent claims on the basis that returning them to state court would be a waste of judicial resources." *Schneider*, 938 F.2d at 994; *see also id.* (collecting cases). Indeed, circuit courts have found a district court abuses its discretion when it "declines to exercise jurisdiction over remaining state law claims ... and remands a suit after investing a significant amount of judicial resources in the litigation." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 601 (5th Cir. 2009); *see also, e.g.*, *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018); *Montano v. City of Chicago*, 375 F.3d 593, 596, 602 (7th Cir. 2004). So, federal courts in Washington regularly retain jurisdiction over state law claims when the court has become familiar with the factual and legal details of the dispute, discovery is complete, and the case is on the eve of trial. For instance, in *Union Station*, the court stated:

> The present litigation is in its final stages. Discovery is complete and dispositive motions have now been ruled upon. A trial date has been set for a little more than a month from the present date. In the interests of judicial economy, and to avoid undue prejudice to the parties in having to re-start this litigation at such a late date, this Court elects to retain its jurisdiction over Union's state law claims.

238 F. Supp. 2d at 1230. In *Good*, the court retained the state law claims after dismissing the federal ones, as judicial economy favored retention due to the court's familiarity with the dispute, stating: "These cases have been pending in this Court for more than two years, during which time, this Court has become familiar with the factual and legal details of the dispute. Economy therefore favors retention." *Good v. Fluor Daniel Corp.*, 222 F. Supp. 2d 1236, 1250-51 (E.D. Wash. 2002). And in *Hunt Skansie v. City of Gig Harbor*, 2010 WL 2650502

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 23

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(W.D. Wash. July 1, 2010), the court retained jurisdiction based on the resources it had spent addressing the claims, and the resources that a state court would need to invest to gain the same familiarity:

> [Plaintiffs] ignore the significant time this Court has spent familiarizing itself with the facts of this case, the effort involved with digesting the state and federal law necessary to decide the first Summary Judgment motion, and the resources the superior court would have to invest to gain the understanding of the issues that this Court already has. Thus, judicial economy alone presents a compelling reason to continue exercising supplemental jurisdiction.

*Id.* at *3.

Here, even if the Court resolves Microsoft's counterclaim, judicial economy, and fairness favor retaining jurisdiction over ODS's state law claims. This Court has spent considerable resources familiarizing itself with the factual and legal issues in this case. Over the past year and a half, it has resolved ODS's motion to remand, Microsoft's motion for partial judgment on the pleadings, and three discovery motions, requiring four hearings. *See* Dkts. 23, 48, 71, 101, 111. The parties have finished fact and expert discovery and filed summary judgment motions, and a bench trial is scheduled for May 16, 2022. *See* Dkt. 80, 125, 140. Forcing a state court to spend the resources "to gain the understanding of the issues that this Court already has" would waste resources, rather than advance judicial economy. *Hunt Skansie*, 2010 WL 2650502, at *3.

Supplemental jurisdiction is also proper because resolving ODS's state law claims will require resolving copyright law questions. For example, ODS's "Own Use" contract claim rests partly on the premise that works composed by other writers are "derivative works." Dkt. 125 at 11:14-13:20; *see also, e.g.*, Dkt. 120 at 2:1-2, 6:7-9, 8:3-21, 14:11-22, 15:7-15 (replete with claims that Microsoft allegedly breached obligations as to "derivative works"). "Derivative work" is a creature of copyright law. 17 U.S.C. § 101. Thus, as Microsoft's summary judgment brief makes clear, to decide ODS's claims, the Court must necessarily examine questions of copyright law. *See* Dkt. 125 at 11:14-13:20. This provides an additional reason to exercise supplemental jurisdiction over ODS's state law claims. *See, e.g.*, *Integrative*

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 24

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Nutrition, Inc. v. Acad. of Healing Nutrition*, 476 F. Supp. 2d 291, 296, 299 (S.D.N.Y. 2007) (exercising supplemental jurisdiction over state law claims that "raise issues—particularly with respect to the scope of damages—that are closely related to [a dismissed claim preempted by the Copyright Act] and warrant the exercise of federal jurisdiction"); *Fuzie v. Manor Care, Inc.*, 461 F. Supp. 689, 698 (N.D. Ohio 1977) (exercising jurisdiction over state law claims that "would of necessity involve questions of federal law").[9]

### C.    The Court Should Deny ODS Summary Judgment on Its Claim for Breach of the Implied Duty of Good Faith and Fair Dealing.

As Microsoft explained in its motion for summary judgment, ODS asserts several good faith and fair dealing claims: the "Exploit Opportunities" claim, "Failure to Register" claim, the "Showtime" claim, and several undeveloped claims, including one alleging Microsoft failed to provide year-end accountings.  Microsoft has shown in its motion why those claims fail as a matter of law.  Dkt. 125 at 16:23-24:17.  In its motion for summary judgment, ODS does not address Microsoft's arguments, much less defeat them.[10]

- ODS claims Microsoft "promised to and failed to reasonably exploit and monetize these works" (the "Exploit Opportunities" claim).  Dkt. 140 at 1.  But as Microsoft explained in its motion, (a) the ICA contains no such "promise," and the claim contradicts the ICA and the parties' course of performance, Dkt. 125 at 17-18; (b) ODS has no evidence from which to value such a claim, *id.* at 18; and (c) this claim is partially barred by the statute of limitations, *id.* at 19.  ODS does not address any of these arguments in its motion.

- ODS claims that Microsoft "knowingly and intentionally failed to register ODS musical compositions with industry organizations" (the "Failure to Register" claim).

---

[9] ODS claims that if the Court grants it summary judgment on Microsoft's counterclaim, the federal claim will be "moot."  Dkt. 140 at 23-24.  But mootness arises from a "material change in circumstances that entirely terminated the party's controversy," and is irrelevant here.  *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993).

[10] ODS also falsely claims that Microsoft breached its contractual representation that "ODS would be entitled to royalties for its works and derivative works, including performances by others and other compositions derived from ODS's music."  Dkt. 140 at 11.  But ODS does not move for summary judgment on its breach of contract claim, and ODS is wrong, in any event.  *See* Dkt. 125 at 8-16.

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 25

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Dkt. 140 at 1; *see also id.* at 12, 16-17.  But as Microsoft explained in its motion, ODS admitted that the compositions it delivered are properly registered.  Dkt. 125 at 19.  Moreover, (a) ODS lacks standing to assert this claim, *id.* at 20; (b) the ICA does not require Microsoft to register any works, *id.* at 20-21; (c) this claim contradicts the parties' course of performance, as Microsoft rejected ODS's repeated requests for Microsoft to complete registrations for works composed by others without ODS asserting any type of breach, *id.* at 21-22; (d) ODS has no proof of damages, *id.* at 22; and (e) this claim is partially barred by the statute of limitations, *id.* at 22-23.  Again, ODS does not address these arguments in its motion.

- ODS claims that "Microsoft refused to allow Showtime, a licensed third party making a live action series based on the *Halo* franchise, to use the iconic chant and other ODS music in that series when asked to do so" (the "Showtime" claim).  Dkt. 140 at 12.  But as Microsoft has repeatedly explained, this is flat-out wrong.  Dkt. 125 at 23.

- Finally, ODS claims that Microsoft breached the implied duty by "not accounting all earned royalties in accord with the ICA by not providing year-end accounting statements to ODS."  Dkt. 140 at 12-13.  But the ICA requires only quarterly statements, which Microsoft provided.  Dkt. 125 at 24.  ODS cannot inject terms into the ICA that simply are not there—a rule of law that defeats ODS's year-end accounting, Exploit Opportunities, and Failure to Register claims.  *Id.* at 17.

Side-stepping these outcome-dispositive points, ODS relies primarily on *Rekhter v. Department of Social & Health Services*, 180 Wn.2d 102, 113-14 (2014), and *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083 (W.D. Wash. 2011).  Neither case saves ODS's claims.

In *Rekhter*, a government agency "ha[d] a specific contractual obligation to [set the] … hours [and thus compensation] authorized in the service plans" of providers caring for persons with disabilities.  180 Wn.2d at 113-14.  Because the agency "prepared the service plans after

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 26

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the contract was formed with the providers," the agency had "discretion to set a future contract term: the quantity of hours and the types of services for which providers will be compensated." *Id.* This discretion included the "discretion to select the formula or method used to calculate a particular value in the contract." *Id.* at 114. The court held the agency had breached the implied duty when it reduced the number of authorized hours for which the providers would be compensated while keeping unchanged the services they would perform. *Id.* Similarly, in *Aventa*, an acquiring company changed its accounting policy in a way that allegedly suppressed the earnout that executives of the acquired company would receive under the acquisition agreement. *Id.* at 1101-02. In both cases, then, an implied duty existed because the contract expressly included a contract term based on future conduct over which the defendant had sole discretion.

But unlike *Rekhter* and *Aventa*, here, the ICA does not contain express contract terms for discretionary future conduct by Microsoft. For instance, the ICA does not require Microsoft to register works, exploit opportunities, pay royalties for non-revenue-generating events, or provide year-end accountings. And again, the Showtime claim is patently false: Microsoft gave Showtime the license and will pay ODS once it knows how much to pay ODS—something it cannot know until Showtime finalizes its music selection. *Rekhter* and *Aventa* simply have no bearing here.[11]

For these reasons (and the reasons stated in Microsoft's motion), the Court should deny ODS's motion for summary judgment on the good faith and fair dealing claim and should grant Microsoft's motion. But even if it were inclined to deny Microsoft's motion, it should still deny ODS's motion because at a minimum, there are issues of fact concerning ODS's Exploit Opportunities claim. ODS claims Microsoft "breach[ed] … its promise to ODS to use reasonable efforts to exploit the ODS compositions," Dkt. 140 at 12:18-19, but even if the ICA contained such a term (and it does not), what constitutes commercially reasonable efforts is a

---

[11] ODS's other good faith and fair dealing cases support Microsoft's motion, not ODS's, because each acknowledges that a party cannot use the implied duty to add to or modify the express terms of the contract. Dkt. 140 at 14-15.

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 27

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

question of fact.  *See, e.g.*, *Preci-Dip SA v. Tri-Star Elecs. Int'l, Inc.*, 2018 WL 6521500, at *3 (C.D. Cal. Sept. 5, 2018) ("the 'commercially reasonable' issue is fact intensive and depends on Defendants' economic business interests"); *Triple J. Saipan, Inc. v. Sanchez*, 2007 WL 4197303, at *3 n.3 (N. Mar. I. Oct. 25, 2007) ("Other courts also hold that determining commercial reasonableness is a question of fact for the jury." (collecting cases)).  This is particularly so given that Microsoft's decision to not monetize content on streaming services like YouTube is grounded in business judgment to encourage "Halo fans to post their own user-generated content on YouTube."  Dkt. 128 ¶ 3; *see also* ODS Dep. at 169:14-20 (ODS admitting a company may exercise its business judgment and "decide how they want to receive value[,] [w]hether it's … specific monetary value or some sort of barter or trade, or just … promotional value").  Therefore, at a minimum, factual issues preclude summary judgment on ODS's Exploit Opportunities Claim.

## IV.    CONCLUSION

For these reasons, Microsoft respectfully asks the Court to deny ODS's motion for summary judgment on Microsoft's counterclaim, and to deny ODS's motion to remand.  In addition, for these reasons and the reasons stated in Microsoft's motion for summary judgment, Microsoft respectfully asks the Court to deny ODS's motion for summary judgment on its good faith and fair dealing claim and grant Microsoft's motion on that claim.

DATED 22nd day of February, 2022.


DAVIS WRIGHT TREMAINE LLP


By: *s/ Ambika Kumar*
    Ambika Kumar, WSBA #38237
    Xiang Li, WSBA #52306
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Tel: (206) 622-3150
Fax: (206) 757-7700
E-mail: ambikakumar@dwt.com
E-mail: xiangli@dwt.com

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 28

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Peter Anderson, *pro hac vice*
Davis Wright Tremaine LLP
865 South Figueroa Street, 24th Floor
Los Angeles, CA 90017-2566
E-mail: peteranderson@dwt.com

Attorneys for Defendant Microsoft Corporation

MICROSOFT'S OPP'N TO PL./COUNTERCL.
DEF.'S CONSOL. MOT. FOR SUMM. J.
(2:20-cv-00882-MLP) - 29

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax